# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: EAST PALESTINE TRAIN DERAILMENT

---------------------------------

REV. JOSEPH SHEELY, ZSUZSA TROYAN; TAMARA FREEZE; SHARON LYNCH; CARLY TUNNO

      Interested Parties-Appellants

HAROLD R. FEEZLE, On Behalf of Themselves and All Others Similarly Situated; SUSAN E. SCHEUFELE, On Behalf of Themselves and All Others Similarly Situated; DAVID J. SCHEUFELE, On Behalf of Themselves and All Others Similarly Situated; ROLLERENA AUTO SALES, LLC, On Behalf of Themselves and All Others Similarly Situated; MARILYN FIGLEY, On Behalf of Themselves and All Others Similarly Situated; ROSEMARY MOZUCH, On Behalf of Themselves and All Others Similarly Situated; CHARLES MOZUCH, On Behalf of Themselves and All Others Similarly Situated; JON LUKE AFFELTRANGER, On Behalf of Themselves and All Others Similarly Situated; EDWARD E. BARNHOUSE, On Behalf of Themselves and All Others Similarly Situated; LAURA MANN;

      Plaintiffs - Appellees

v.

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION,

      Defendants – Appellees

       /

## APPEAL FROM THE U.S. DISTRICT COURT, N.D. OHIO

## BRIEF OF INTERESTED PARTIES-APPELLANTS' SHEELY et. al.

**Submitted by:**

David Graham, *pro hac vice*

Attorney for Objector-Appellants Troyan, Lynch, Freeze and Tunno

210 E. Forsyth St.

Jacksonville, FL 32202

(904) 567-6529

# TABLE OF CONTENTS

Table of Contents      p. i

Corporate Disclosure Statement      p. iii

Table of Citations      p. iv

Statement Regarding Oral Argument      p. x

Statement of Jurisdiction      p. 1

Statement of Issues      p. 1

Statement of the Case      p. 2

     A. Facts relating to denial of extension of time to appeal bond order      p. 2

     B. Facts relating to the appeal bond order itself      p. 5

Summary of the Argument      p. 7

Argument      p. 9

     Issue I. The district court abused its discretion by disregarding this Court's March 21, 2025 order expressly providing that appellants had time to move for an extension of time to appeal the district court's January 16, 2025 order setting appeal bond.      p. 9

     Standard of Review      p. 9

     Discussion      p. 10

Issue II: The district court's abuse of discretion is not a harmless error, where its appeal bond order was grossly improper.      p. 16

     Standard of Review      p. 16

     Discussion      p. 18

i

A.  Requiring a $25,000 bond for taxable costs on appeal is contrary to law and fact, and an abuse of discretion. p. 18

B.  The district court erred, as a matter of law, in including $825,000 in administrative costs as a component of an appeal bond. p. 23

C.  The other reasons advanced by the district court for imposing an appeal bond are either inapposite, illogical, untrue, or irrelevant. p. 27

Issue III:  On remand, this case should be reassigned to a different judge. p. 33

Standard of Review p. 33

Discussion p. 33

Conclusion p. 37

Certificate of Compliance p. 38

Addenda p. 39

Designation Of Relevant District Court Documents under 6 Cir. R. 28(b)(1)(A)(i) and 6 Cir. R. 30(g)(1) p. 39

Copies Of Unpublished Opinions Cited per FRAP 32.1(b) or 6 Cir. R. 32.1(a) p. 47

*Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.)*, (9th Cir. Nos. 12-15757, No. 12-15782, Apr 24, 2014) p. 47

## CORPORATE DISCLOSURE STATEMENT

Per 6 Cir. R. 26.1(a), appellants Joseph Sheely, Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno are individuals with no corporate affiliations.

# TABLE OF CITATIONS

## Cases

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998)  p. 18

*Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)  p. 11

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)  p. 15

*Arizona v. California*, 460 U.S. 605 (1983)  pp. 9-10

*Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669 (6th Cir.2002)  p. 32

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir.2007)  pp. 17-19

*Bailey v. St. Ambrose Academy*, 38 F.3d 1215 (6th Cir. 1994)  p. 1

*BDT Prods., Inc v. Lexmark Int'l, Inc.*, 405 F.3d 415 (6th Cir. 2005)  p. 23

*Brown v. Crowley*, 312 F.3d 782 (6th Cir.2002)  p. 33

*Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)  p. 15

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir.2004)  pp. 17-18, 23-24

*Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974)  p. 32

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)  p. 19

*Dunlop v United States*, 165 U.S. 486 (1897)  p. 29

*Everson v. Leis*, 556 F.3rd 484 (6th Cir. 2009)  p. 6

*Freeland v. Amigo*, 103 F.3d 1271 (6th Cir. 1997)     p. 16

*Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586 (6th Cir.1995)     p. 9

*Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304,
     107 L.Ed.2d 237 (1989)     p. 15

*Herb v. Pitcairn*, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945)     p. 15

*Holland v. Florida*, 560 U.S. —, 130 S.Ct. 2549, 177 L Ed 2d 130
     (2010)     p. 15

*Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745
     (6th Cir. 2011)     p. 15

*Howat v. State of Kansas*, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550
     (1922)     pp. 11-12

*John B. v. Goetz*, 626 F.3d 356 (6th Cir. 2010)     p. 37

*Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.)*,
     Nos. 12-15757, No. 12-15782, Apr 24, 2014)     pp. 19, 22, 25

*Lavin v. Husted*, 764 F.3d 646 (6th Cir. 2014)     p. 37

*Lindsey v. Normet*, 405 U.S. 56 (1972)     p. 32

*Market Street R. Co. v. Railroad Comm'n of Cal.*, 324 U.S. 548,
     65 S.Ct. 770, 89 L.Ed. 1171 (1945)     pp. 16-17

*Mason v. Mitchell*, 729 F.3d 545 (6th Cir. 2013)     p. 10

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548,
     104 S.Ct. 845, 78 L.Ed.2d 663 (1984)     p. 16

*McFall v. Tooke*, 308 F.2d 617 (6th Cir. 1962)     pp. 14-15

*McKentry v Sec'y of Health and Human Services*, 655 F.2d 721

(6th Cir. 1981)                                                    p. 29

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540 (6th Cir. 2004)     p. 10

*Noatex Corp. v. King Constr. of Houston, L.L.C.*, 732 F.3d 479
    (5th Cir. 2013)                                         p. 18

*North Carolina v. Pearce*, 395 U.S. 711 (1969)                       p. 32

*Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)  p. 16

*Reeder– Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*,
    497 F.3d 805 (8th Cir. 2007)                             p. 18

*Riva v. Ficco*, 615 F.3d 35 (1st Cir. 2010)                          p. 18

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,

    490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)    p. 11

*Rorrer v City of Stow*, 743 F.3d 1025 (6th Cir. 2014)     p. 37

*Schafer v. City of Defiance Police Dep't*, 529 F.3d 731 (6th Cir.2008)  p. 16

*Schmidt v. FCI Enters. LLC*, 3 F.4th 95 (4th Cir. 2021)             pp. 15, 17,
                                                            32

*Sciaroni  v. Consumer Plaintiffs (In re  Target Corp. Customer*
    *Data Sec. Breach Litig.)*, 847 F.3d 608 (8th Cir. 2017)  pp. 25-27

*Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987)                    p. 17

*Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004)                    pp. 9-10

*Solomon v. United States*, 467 F.3d 928 (6th Cir.2006)              p. 33

*Swift & Co. v. Kortrecht*, 110 F. 328 (6th Cir. 1901)              p. 15

*In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017) p. 18

*Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014) pp. 17, 21-22, 24-25

*Tenn. Conference of NAACP v. Lee*, 105 F.4th 888 (6th Cir. 2024) p. 6

*Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) p. 16

*United States v. Borden Co.*, 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954) p. 16

*United States v. Chem. Found.*, 272 U.S. 1 (1926) p. 29

*United States v. O'Dell*, 320 F.3d 674 (6th Cir. 2003) p. 10

*United States v. Santonelli,* 128 F.3d 1233 (8th Cir. 1997) p. 10

*United States v. Shipp*, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, 8 Ann.Cas. 265 (1906) pp. 12-14

*United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) pp. 12-14

*Vinci v. Consolidated Rail Corp.*, 927 F.2d 287 (6th Cir. 1991) p. 16

*Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) pp. 11-12

*Williams v. Renal Care Grp.*, 696 F.3d 518 (6th Cir. 2012) p. 37

## Constitutional Provisions

US Const, art III p. 30

**Statutes**

| | |
|---|---|
| 28 U.S.C. §144 | p. 33 |
| 28 U.S.C. §1332 | p. 1 |
| 28 U.S.C. §1920 | p. 19 |
| 28 U.S.C. §2106 | pp. 8, 14 |

**Court Rules**

| | |
|---|---|
| F.R.A.P. 3(a)(2) | p. 17 |
| F.R.App.P. 4(a)(1)(A), (a)(5) | pp. 4, 15 |
| F.R.App.P. 7 | *passim* |
| F.R.A.P. 25(a)(2)(B)(i) | p. 20 |
| F.R.A.P. 31(a)(1) | p. 30 |
| F.R.Civ.P. 54(d) | p. 19 |
| 6 Cir. R. 25(a)(1) | pp. 19, 20 |
| 6 Cir. R. 31(a) | p. 19 |
| 6 Cir. R. 30(d)(1) | p. 19 |
| 6 Cir. R. 39(a) | p. 19 |
| 6 Cir. R. 46(b) and (c) | p. 31 |
| N.D. Ohio L.Civ.R. 7.1(d) | p. 35 |

**Miscellaneous**

https://www.opn.ca6.uscourts.gov/active_atty/rptAccountStatus_

C.pdf, p. 49 of 98         p. 20

https://www.opn.ca6.uscourts.gov/active_atty/rptAccountStatus_
R.pdf, p. 61 of 71         p. 20

https://www.uscourts.gov/court-programs/fees/court-appeals-
miscellaneous-fee-schedule         p. 20

Model Rule of Professional Conduct 1.8(e)/Florida Rule4-1.8(e)         p. 31

**STATEMENT REGARDING ORAL ARGUMENT**

Undersigned counsel firmly adheres to the philosophy that, in a typical appeal, whatever the subject matter, counsel have been rationed however many pages or words of argument the rules (or the Court on motion) allows, and thus should have said, and supported, everything they have to offer in support of their arguments. Thus, the purpose, and value, of oral argument is for the judicial panelists to ask questions, to help clarify their understanding of the facts or issues or to better inform their evaluation of the arguments. Accordingly, undersigned counsel respectfully requests oral argument IF a member of this Court has one or more questions he or she wishes to pose, or, alternatively, if counsel for appellees requests and is granted oral argument, then undersigned counsel will appear to listen, possibly offer brief rebuttal, and then respond to any questions that may arise.

## STATEMENT OF JURISDICTION

A.  The District Court had jurisdiction under 28 U.S.C. §1332.

B.  This Court has jurisdiction under 28 U.S.C. §1291, the order appealed (ECF No. 557) being a final judgment as to appeal bond.

C.  Judgment:  March 30, 2025 (ECF No. 923); Notice of Appeal:  April 28, 2025 (ECF No. 975).

D.  An order denying a motion for extension of time for filing a notice of appeal is appealable.  *Bailey v. St. Ambrose Academy*, 38 F.3d 1215 (6th Cir. 1994) and cases there cited.

## STATEMENT OF ISSUES

**Issue I. Did the district court clearly abuse its discretion by disregarding this Court's March 21, 2025 order expressly providing that appellants had time to move for an extension of time to appeal the district court's January 16, 2025 order setting appeal bond?**

**Issue II:  Was the district court's abuse of discretion a harmless error, where its appeal bond order was grossly improper?**

**A.  Was requiring a $25,000 bond for taxable costs on appeal contrary to law and fact, and an abuse of discretion?**

**B.  Did the district court err, as a matter of law, in including $825,000 in administrative costs as a component of an appeal bond?**

**C.  Are the other reasons advanced by the district court for imposing an appeal bond either inapposite, illogical, untrue, or irrelevant?**

**Issue III:  On remand, should this case be reassigned to a different judge?**

1

## STATEMENT OF THE CASE

In this class action, Objectors (appellants) appeal a March 30, 2025 order (ECF No. 923) of the Northern District of Ohio, Hon. Benita Y. Pearson presiding, denying Objectors' Motion (ECF No. 876) To Extend Time For Appeal of January 16, 2025 Order Setting Appeal Bond (ECF No. 733).

## A. Facts relating to denial of extension of time to appeal the bond order.

Following the district court's approval of a Class Action Settlement Agreement, on September 27, 2024, Objecting Settlement Class Member Rev. Joseph Sheely, filed a Notice of Appeal (ECF No. 558), this Court's Docket No. 24-3852. On October 8, 2024, Objecting Settlement Class Members Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno, filed a Notice of Appeal (ECF No. 570), this Court's Docket No. 24-3880. All objectors filed their briefs on appeal timely, Rev. Sheely on December 2, 2024 (corrected Dec. 9, 2024), and Troyan, Freeze, Lynch and Tunno on December 10, 2024 (corrected Dec. 12, 2024).

Decrying the appeals as frivolous without any examination of the substance of the Objectors' appeal briefs, Judge Pearson on January 16, 2025, entered a Memorandum of Opinion and Order (ECF No. 733) granting Plaintiffs' Motions (ECF Nos. 567 and 671) to require an appeal bond in the amount of $850,000. Objectors then promptly, on January 19, 2025, filed in this Court Motions to

Eliminate or Reduce Appeal Bond, with an opposing brief and reply brief filed on or before January 31, 2025

On March 21, 2025, this Court *sua sponte* issued an order (Dkt. 47), holding that Objectors could only challenge the appeal bond by separately appealing the order fixing its amount, or by a motion to stay the bond order, which Objectors insisted they had not sought. The March 21, 2025 order (Dkt. 47) then provides:

> To that end, our only avenue to address the appeal bond would be on a motion to stay, which the Objectors have definitively stated is not their intent. Even assuming we could construe these motions as seeking a stay, that relief is not warranted. First, the Objectors have not argued, let alone shown, that they are likely to succeed on the merits of their appeals from the final approved settlement. ==Second, they cannot show irreparable harm, in part because they could still obtain review of the bond order by filing a direct appeal from that order. See Fed. R. App. P. 4(a)(1)(A), (a)(5) (giving a party thirty days from the date of the order to file an appeal and allowing the district court to extend the time to file an appeal if the party moves for an extension within thirty days after the time to appeal has expired).== [Highlighting added.]

Objectors timely moved for reconsideration (April 4, 2025), demonstrating that a motion in the appellate court is an allowable, alternative means for challenging an appeal bond order. That motion remains pending before this Court as of the time this brief is being submitted.

Separately, the *same day*—March 21, 2025—Objectors filed their Motion to Extend Time (ECF No. 876) in the district court, noting *inter alia* that this Court had expressly ruled that "they could still obtain review of the bond order by filing a

direct appeal from that order" by seeking additional time under F.R.App.P. 4(a)(1)(A), (a)(5). On March 30, 2025, Judge Pearson, despite acknowledging the quoted portion of this Court's March 21, 2025 order, ruled (ECF No. 923, PageID#.61237-9):

Later that same day, the Objectors filed the within Motion (ECF No. 876) in this Court.

The Objectors' March 21, 2025 motion is untimely because it was not filed within the grace period allowed by Rule 4(a)(5), which in no event may extend beyond 60 days after the entry of judgment (30 days after the expiration of the original 30-day deadline under Rule 4(a)(1)).3 Sixty days after the entry of the Bond Order (ECF No. 733) in the case at bar was March 20, 2025. "In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). "The district court may extend the time to file a notice of appeal if:  (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A). "No extension under. . . Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C). Thus, a district court acting under Rule 4(a)(5) may not under any circumstances extend the time for filing the notice of appeal beyond 30 days after the time originally prescribed by Rule 4(a)(1). See *Hiles v. Army Review Board  Agency*, No. 16-3996, 2017 WL 7806617, at *1 (6th Cir. Aug. 23, 2017) ("At most . . . the district court [may] extend[ ] the deadline until . . . 30 days after the original . . . deadline" for filing the notice of appeal) (citing *Endicott Johnson Corp. v. Liberty Mut. Ins. Co*., 116 F.3d 53, 56 (2d Cir. 1997) (noting that the district court is never authorized to grant a Rule 4(a)(5) motion that was filed beyond the 30-day extension period)).  Because the within motion was filed on  March

4

21, 2025, Objectors have failed to comply with Rule 4(a)(5)(A)(i). *Ultimate Appliance CC v. Kirby Co*., 601 F.3d 414, 416 (6th Cir. 2010) (stating the "the district court did not err in holding it lacked authority to grant the plaintiff's untimely motion" because it was filed one day after the cutoff date). The Objectors admit the within motion "was filed 1 day beyond the time allowed." Reply Memorandum (ECF No. 912) at PageID #: 61030

The Rules do not permit any exception for such a late filing, even upon a showing of excusable neglect or good cause. Rule 4(a)(5)(A)(ii) does not provide an exception to untimely motions under Rule 4(a)(5)(A)(i) based on excusable neglect or otherwise, despite how Objectors' Memoranda (ECF Nos. 876 and 912) read. See *In re Cardizem CD Antitrust Litig*., 391 F.3d 812, 813-14 (6th Cir. 2004) (appellant whom appealed a denial of her objections to the class action settlement properly filed a separate notice of appeal from the bond order). Objectors' reliance on a passing, conclusory sentence on page 3 of the Sixth Circuit Order that they could overcome the jurisdictional issue by seeking an extension of time under Rule 4(a)(5) is misplaced. There is no indication that the Sixth Circuit performed the calculation of when Objectors' motion was due. It is Objectors' burden to demonstrate they timely filed the within motion. *United States v. Streck*, 62 Fed.Appx. 575, 577 (6th Cir. 2003). Moreover, "ignorance of the rules or mistakes in construing the rules" does not establish excusable neglect. *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006).

From that order, Objectors timely appealed (ECF No. 975).

## B. Facts relating to the appeal bond order itself.

Class counsel filed sequential motions for appeal bond (ECF No. 567 as to appellant Sheely, ECF No. 671 as to appellants Troyan *et al*.) Both motions sought $25,000 for taxable costs, and $825,000 for increased "administrative expenses" allegedly due to delay. The $25,000 component was announced *ex nihilo*,

unsupported by any itemization of allowable costs class counsel expected to incur (ECF No. 567, PageID#14646, ECF No. 567-1, PageID#.14655-6; ECF No. 571, PageID#.46663, ECF No. 571-1, PageID#.46672). The $825,000 amount was posited in the hearsay, conclusory[1] declaration (ECF No. 567-2) of Scott Fenwick, Senior Director, Kroll Settlement Administration LLC, the Settlement Administrator, based on "my personal knowledge and information provided by other experienced Kroll employees working under my general supervision." (ECF No. 567-2, PageID#.14660). Again, no attempt was made to itemize or to identify *why* costs would increase due to appeal, or the nature of those increased costs.

Judge Pearson *sua sponte* ordered the target appellant(s) to file any response within 2 business days or less (ECF No. 573, ECF No. 721-2), which undersigned counsel accomplished (for Rev. Sheely, ECF Nos. 614, 660, 660-1; for appellants Troyan *et al*., ECF Nos 725, 725-1, 725-2, 725-3, 725-4, 725-5, and 725-6. In their timely responses, appellants demonstrated (a) the $25,000 component was entirely devoid of factual or legal basis, and (b) the ineffectual Fenwick declaration was unsupported by any cognizable fact, and (c) no appellant has the financial ability to post more than a *de minimis* bond, so each would be compelled to withdraw their appeal if a substantial bond were required.

---

[1] Conclusory declarations are worthless. *Tenn. Conference of NAACP v. Lee*, 105 F.4th 888, 904-907 (6th Cir. 2024); *Everson v. Leis*, 556 F.3rd 484, 493 (6th Cir. 2009).

Class counsel replied as to Rev. Sheely only (ECF No. 667), wherein they doubled down on their reliance on unsworn hearsay but adduced no new facts or authority.  On January 16, 2025, Judge Pearson granted both motions, requiring each individual appellant to post a $170,000 bond (if any appellant withdraws their appeal, remaining appellant(s) must increase their shares pro-rata to maintain an $850,000 total (ECF No. 733, PageID#.51937-8).

## SUMMARY OF THE ARGUMENT

In this toxic tort class action, the district court approved a settlement, and Objectors (Appellants) separately appealed.  After Objectors' briefs on appeal were filed, the district court order them to post an appeal bond of $850,000, based on claims, unsupported by competent evidence, that taxable costs of $25,000 and delay costs of $825,000 would be incurred by class counsel in defending the appeals, and despite sworn declarations by all Objectors they lack the finances to post any such bond.

Three days later, Objectors filed motions in the pending appeals challenging the bond requirement; 61 days later, this Court sua sponte dismissed those motions, on grounds the appeal bond order had to be separately appealed, and noting that time remained for Objectors to seek an extension of time to appeal the bond order. Objectors, the same day, moved to extend time; Objectors also moved separately for reconsideration of the dismissal order, which motion remains pending.

The district court denied the motion to extend time, not as an exercise of discretion, but on grounds the motion was untimely, notwithstanding this Court's order declaring that time remained for just such a motion. The district court disregarded this Court's order as a "passing, conclusory sentence" (even though it represented one of two reasons for dismissal) giving "no indication that the Sixth Circuit performed the calculation of when Objectors' motion was due." Objectors then timely appealed that order herein.

The district court's disregard of this Court's order violates the law of the case and mandate doctrines, and represents the district court assuming to act as a higher, rather than an inferior, court. It is well settled that even an erroneous court order must be obeyed, so long as the court issuing the order had jurisdiction to enter it, and this Court's jurisdiction remains undisputed. However, this Court's order of dismissal, to the extent holding that time remained to seek an extension of time, was not erroneous, but a proper application of 28 U.S.C. §2106 and/or of equitable tolling. Meanwhile, the district court's failure to exercise discretion with regard to extending the time limit was itself an abuse of discretion under settled law.

The district court's error in disregarding this Court's order was not harmless. Turning to the merits of the appeal bond order, the district court's use of a $25,000 figure as to taxable costs on appeal was based on no evidence and no justification,

other than a number plucked out of thin air. The $825,000 component is, according to a panoply of case law, not permissible, and it, too, was predicated on no competent evidence any such expense would flow merely from appeal being pursued. The appeal bond order was improper under F.R.App.P. 7, and should not preclude Objectors' appeals being resolved on their merits.

Finally, the district court repeatedly went out of its way to impede Objectors' right to appeal, so far departing from acceptable norms of judicial neutrality as to warrant remanding this case to a different judge (if remanding).

## ARGUMENT

**Issue I. The district court clearly abused its discretion in disregarding this Court's March 21, 2025 Order expressly providing that appellants had time to move for an extension of time to appeal the district court's January 16, 2025 order setting appeal bond.**

### Standard of Review

"[T]he law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages.... Like stare decisis, the doctrine of the law of the case is quite rigidly applied to force obedience of an inferior court * * *. *Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 589 (6th Cir.1995).

Under Sixth Circuit law, "[t]he law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same

9

issues in subsequent stages in the same case.' " *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004), quoting *Arizona v. California*, 460 U.S. 605, 618 (1983).

" '[T]he mandate rule is a specific application of the law-of-the-case doctrine.' " *Id*. at 570. The mandate rule says "that a district court is bound to the scope of the remand issued by the court of appeals." *Id*.

Once this court issues its decision, " 'the trial court must proceed in accordance with the mandate and the law-of-the-case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.' " *Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004)). The mandate " 'must be read with the analysis offered in the opinion.' . . . [C]ontext matters." *United States v. O'Dell*, 320 F.3d 674, 681 (6th Cir. 2003) (quoting *United States v. Santonelli,* 128 F.3d 1233, 1237-38 (8th Cir. 1997)).

## Discussion

Fewer principles are as indisputable as that lower courts must conform their judgments to the directions and precedents of higher courts. "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own

decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 485, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989). While lower courts may express disagreement with a superior court's decision, they must conform their judgments so as to strictly adhere to appellate instructions. *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

A related principle holds that a court order is binding, irrespective of any error that may attend it, provided only that the court had jurisdiction to enter it. In *Walker v. City of Birmingham*, 388 U.S. 307, 313-315, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court approvingly invoked its earlier decision in *Howat v. State of Kansas*, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922) (highlighting added):

> *Howat v. State of Kansas*, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550, was decided by this Court almost 50 years ago. That was a case in which people had been punished by a Kansas trial court for refusing to obey an antistrike injunction issued under the state industrial relations act. They had claimed a right to disobey the court's order upon the ground that the state statute and the injunction based upon it were invalid under the Federal Constitution. * * *
>
> This Court, in dismissing the writ of error, not only unanimously accepted but fully approved the validity of the rule of state law upon which the judgment of the Kansas court was grounded:
>
> > "An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the

error be in the assumption of the validity of a seeming, but void law going to the merits of the case. ==It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.==" 258 U.S., at 189—190, 42 S.Ct., at 280.

To like effect is *United States v. United Mine Workers of America*, 330 U.S. 258, 290-293, 67 S.Ct. 677, 91 L.Ed. 884 (1947), invoking *United States v. Shipp*, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, 8 Ann.Cas. 265 (1906) (highlighting added):

* * * This Court * * * in *United States v. Shipp*, 1906, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, 8 Ann.Cas. 265, provided protection for judicial authority in situations of this kind. In that case this Court had allowed an appeal from a denial of a writ of habeas corpus by the Circuit Court of Tennessee. The petition had been filed by Johnson, then confined under a sentence of death imposed by a state court. Pending the appeal, this Court issued an order staying all proceedings against Johnson. However, the prisoner was taken from jail and lynched. Shipp, the sheriff having custody of Johnson, was charged with conspiring with others for the purpose of lynching Johnson, with intent to show contempt for the order of this Court. Shipp denied the jurisdiction of this Court to punish for contempt on the ground that the stay order was issued pending an appeal over which this Court had no jurisdiction because the constitutional questions alleged were frivolous and only a pretense. The Court, through Mr. Justice Holmes, rejected the contention as to want of jurisdiction, and in ordering the contempt to be tried, stated:

"We regard this argument as unsound. It has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt. *In re Sawyer*, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402; *Ex parte Fisk*, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; *Ex parte Rowland*, 104 U.S. 604, 26 L.Ed. 861. ==But even if the==

Circuit Court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument, and to take the time required for such consideration as it might need. See *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 387, 4 S.Ct. 510, (514), 28 L.Ed. 462, 465. Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. Rev.Stat. § 766, act of March 3, 1893, c. 226, 27 Stat. 751 (28 U.S.C.A. § 465). The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it.' 203 U.S. 573, 27 S.Ct. 166."

If this Court did not have jurisdiction to hear the appeal in the *Shipp* case, its order would have had to be vacated. But it was ruled that only the Court itself could determine that question of law. Until it was found that the Court had no jurisdiction, "* * * it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition * * *."

Application of the rule laid down in *United States v. Shipp, supra*, is apparent in *Carter v. United States*, 5 Cir. 1943, 135 F.2d 858. There a district court, after making the findings required by the Norris-LaGuardia Act, issued a temporary restraining order. An injunction followed after a hearing in which the court affirmatively decided that it had jurisdiction and overruled the defendants' objections based upon the absence of diversity and the absence of a case arising under a statute of the United States. These objections of the defendants prevailed on appeal, and the injunction was set aside. *Brown v. Coumanis*, 5 Cir. 1943, 135 F.2d 163, 146 A.L.R. 1241. But in *Carter*, a companion case, violations of the temporary restraining order were held punishable as criminal contempt. Pending a decision on a doubtful question of jurisdiction, the District Court was held to

13

have power to maintain the status quo and punish violations as contempt.

Here, Judge Pearson took it upon herself to declare this *superior* Court's clear, unambiguous holding—"they could still obtain review of the bond order by filing a direct appeal from that order"—to be an irrelevant, "passing, conclusory" statement not reflecting due consideration by this Court's judges. But this Court made that statement as part (one-half) of its justification for dismissing the motions challenging appeal bond—time remained for a direct appeal. If this Court was in error, it is not for a lower court to simply ignore such a specific ruling; the error, if any, can only be corrected by this Court or the Supreme Court.

Of course, this Court was NOT in error. Title 28 U.S.C. §2106 provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

Having consumed 61 days in deciding to dismiss the motions to vacate the bond order, this Court reasonably and *properly* decided that it would be "just under the circumstances" to allow Objectors at least March 21 itself in which to seek to extend the time for appealing the bond order. *McFall v. Tooke*, 308 F.2d 617, 626 (6th Cir. 1962) (defendant allowed 20 days to move for new trial, in which case

new trial granted, failing which the district court judgment was affirmed, citing the statute)[2].

Judge Pearson could properly have adduced her substantive analysis, then opined, "Nonetheless, this Court is bound by the Sixth Circuit's clear declaration, and, inasmuch as Objectors sought an extension of time the very same day, despite

---

[2] This Court could also properly view the time limit in F.R.App.P. 4(a)(1)(A), (a)(5) as functioning like a statute of limitations, rather than a jurisdictional restriction. Time requirements in lawsuits between private litigants are customarily subject to "equitable tolling". *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989). Equitable tolling applies where, as in this instance, a party filed an appropriate motion or other document but in the wrong court (here, the wrong file). *Burnett v. New York Central R. Co*., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (plaintiff timely filed complaint in wrong court); *Herb v. Pitcairn*, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945) (same); *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members). Equitable tolling is governed by a two-factor test: (1) whether the litigant pursued his/her rights diligently and (2) whether some extraordinary circumstance prevented timely filing. *Holland v. Florida*, 560 U.S. —, 130 S.Ct. 2549, 2560, 177 L Ed 2d 130 (2010); *Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 750 (6th Cir. 2011). Here, diligence is clearly established, while the "extraordinary circumstance" is a combination of Objectors' reliance on case law, *e.g.*, *Schmidt v. FCI Enters. LLC*, 3 F.4th 95, 100 (4th Cir. 2021) (including a 6th Circuit decision, *Swift & Co. v. Kortrecht*, 110 F. 328, 328-329 (6th Cir. 1901)) recognizing that a motion is a permissible alternative to a separate appeal regarding challenging an appeal bond and this Court taking 61 days to *sua sponte* dismiss the motions (no jurisdictional challenge having been raised by adverse parties) while failing to acknowledge such case law, thus exhausting the time allowed for direct appeal. It was not within the district court's authority to overrule this Court's application of equitable tolling.

its misgivings, this Court will exercise its discretion." She then might have actually exercised discretion, either to extend the time or refuse to do so, and review by this Court would be for abuse of discretion. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir.2008). <u>But she opted not to do so, contenting herself with overruling this Court</u>. Her failure to exercise discretion is, itself, an abuse of discretion. *Vinci v. Consolidated Rail Corp.*, 927 F.2d 287, 288 (6th Cir. 1991) ("This dismissal here appears to be almost mechanical; the date for the filing of the pretrial order had passed and an order of dismissal issued. The failure to exercise discretion can also constitute an abuse of discretion."); accord: *Freeland v. Amigo*, 103 F.3d 1271, 1279 (6th Cir. 1997).

**Issue II: The district court's abuse of discretion is not a harmless error, where its appeal bond order was grossly improper.**

### Standard of Review

The party that "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Palmer v. Hoffman*, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943); see also *Tipton v. Socony Mobil Oil Co*., 375 U.S. 34, 36, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) (per curiam); *United States v. Borden Co*., 347 U.S. 514, 516–517, 74 S.Ct. 703, 98 L.Ed. 903 (1954); cf. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *Market Street R. Co. v. Railroad Comm'n of*

*Cal.*, 324 U.S. 548, 562, 65 S.Ct. 770, 89 L.Ed. 1171 (1945) (finding error harmless "in the absence of any showing of ... prejudice").

Here, therefore, Judge Pearson's failure to exercise discretion, and her concomitant violations of the rule of mandate and law of the case, must be shown to be prejudicial. And that turns on whether the underlying order setting appeal bond is improper.

F.R.A.P. 7 provides, "In a civil case, the district court may require an appellant to file a bond * * * in any form and amount necessary to ensure payment of costs on appeal." Review of such an order is therefore for abuse of discretion. *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). But whether to dismiss an appeal for failure to post an appeal bond is a matter committed to the *appellate court's discretion*. F.R.A.P. 3(a)(2) ("An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal."); *Schmidt v FCT Enterprises LLC, supra,* 3 F.4th at 99; *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir.2007).

But whether an appeal bond can include claimed additional administrative costs for maintaining a class action settlement pending appeal is a question of law, reviewed de novo on appeal. *Tennille v. Western Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014), citing *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816 (6th

Cir.2004) and *Noatex Corp. v. King Constr. of Houston, L.L.C.*, 732 F.3d 479, 488 (5th Cir. 2013).

Likewise, the proper construction of F.R.A.P. 7, including the meaning of "costs on appeal", is a question of law reviewed de novo. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998); *Azizian*, 499 F.3d at 955; *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010); see also *Reeder– Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 497 F.3d 805, 808 (8th Cir. 2007) (reviewing de novo the interpretation of federal appellate rules).

Thus, whether claimed costs are allowable for appeal bond purposes is a legal question subject to de novo appellate review. *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614 (8th Cir. 2017); *Adsani*, *id*.

## Discussion

### A. Requiring a $25,000 bond for taxable costs on appeal is contrary to law and fact, and an abuse of discretion.

The demand for $25,000 to cover taxable costs of the appeal was based on no identifiable, factually-supported estimate, as appellants noted in answer to the motions for bond (ECF No. 660, PageID#.46297-00; ECF No. 625-1, PageID#.51731-3). Appellants accurately noted almost all taxable costs of appeal—filing fees, transcript preparation, transmittal of the record—are in the first instance paid by *appellants*, so prevailing appellees have no such costs to

18

recoup—and likewise for costs allowed by 28 U.S.C. §1920[3] (most of which do not arise on appeal). As noted in *Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.)*, 9th Cir. Nos. 12-15757, No. 12-15782, Apr 24, 2014), at *3-*4, citing *Azizian, supra* (highlighting added):

> A district court may always include in an appeal bond the costs specified in Fed. R. App. P. 39. See *id*. at 955-56. Yet these costs rarely exceed a few hundred dollars when taxed against an appellant. The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. P. 39 unless such expenses may be shifted pursuant to another statute. See *id.* at 959-60.

Appellants further noted (ECF No. 725-1, PageID#.51732-3) briefing costs are not taxable in the Sixth Circuit pursuant to 6 Cir. R. 39(a), because class plaintiffs' counsel must file electronically, 6 Cir. R. 25(a)(1), 6 Cir. R. 31(a); 6 Cir. R. 30(d)(1).

Attempting to circumvent this limitation, Judge Pearson *speculates* class counsel will "incur docket fees related to the transcript of the fairness hearing", fees for appearing *pro hac vice*, and "there will be funds spent on printing and copying during the appeal writing and oral argument stages" (ECF No. 733, PageID#.51934). But, first, the fairness hearing transcript was filed September 25, 2024 (ECF No. 553). Second, class plaintiffs are represented on appeal by Paul D.

---

[3] Taxable costs under F.R.Civ.P. 54(d) are limited to those specified in 28 U.S.C. §1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Clement and Matthew D. Rowen (Doc. 30, p. 6), who were admitted to this Court's bar on March 2, 2000 and October 27, 2017 respectively[4]. They will incur no *pro hac vice* fees[5].

Third, it is literally impossible to identify any reason funds will be "spent on printing and copying during the appeal writing and oral argument stages." Nothing in the record suggests class counsel will not (now "did not") use e-mail to exchange written communications with Messrs. Clement or Rowen, and vice versa, especially as the appeal is predicated upon an electronic record, and attorneys are *required* to use electronic filing in both the district court and this Court, F.R.A.P. 25(a)(2)(B)(i); 6 Cir. R. 25(a)(1). But in terms of prognosticating a dollar cost for any incidental use of "hard copy", FedEx Office, a national chain, charges 20 cents

---

[4] These bar admission dates were obtained from https://www.opn.ca6.uscourts.gov/active_atty/rptAccountStatus_C.pdf, p. 49 of 98 and https://www.opn.ca6.uscourts.gov/active_atty/rptAccountStatus_R.pdf, p. 61 of 71.

[5] Appellants noted outside appellate counsel's appearance in ECF No. 725-1, PageID#.51728, but, such being inconvenient to Judge Pearson's desire to impede any appellate challenge, she assumes plaintiffs' appellate counsel are not members of this Court's bar.

Note this Court charges a $199 fee for admission to its bar. https://www.uscourts.gov/court-programs/fees/court-appeals-miscellaneous-fee-schedule. $25,000 would represent 125 such admission fees. This illuminates why failure to itemize anticipated taxable costs results in an order bereft of factual basis, grounded entirely on demonstrably false speculation.

per page for bulk orders[6], so $25,000 represents almost 125,000 pages—upon entry of final judgment (ECF No. 557), the electronic record consisted of only 14,586 pages, so copying every page at FedEx Office (to no useful purpose) would only cost $2,917.20. And there is no valid reason for expecting plaintiffs' appellate counsel to do so.

Given absolutely no legitimate basis for positing that class plaintiffs' appellate counsel will incur $25,000 in taxable costs, Judge Pearson abused her discretion in including that amount in her calculation of an appeal bond. As held in *Tennille, supra*, 774 F.3d at 1257 (highlighting added)[7]:

> Next, Objector Dorsey challenges the district court's decision to include in the appeal bond $25,000 for printing, copying, and preparing the appellate record. Although such costs are recoverable "costs on appeal," see 28 U.S.C. § 1920; Fed. R.App. P. 39(e), the district court abused its discretion in including $25,000 here to cover such costs. See *Westinghouse Credit Corp. v. Bader & Dufty*, 627 F.2d 221, 224 (10th Cir.1980).
>
> Plaintiffs have failed to justify the need for the appeal bond to cover an estimated $25,000 for printing, copying, and record preparation, asserting only that "[a] bond for such expenses is routine and need not be requested with specificity given the number of unknowns that counsel face when asking for such a bond" (Nel.App. at 702). While an appeal bond request by necessity must be based on

---

[6] https://www.office.fedex.com/default/copies.html?srsltid=AfmBOorF5ASPn EUlI1YLyWIcHKhjHTeTwTlagpEY5SdDGmtT3-XdSIYg

[7] In *Tennille* itself, the Tenth Circuit reduced the bond to $5,000, because the appellants conceded that amount was proper. *Here, appellants contend that no amount above zero is legitimate*.

an estimate of the costs that a litigant may incur in defending against an appeal, ==Plaintiffs here made no effort to justify their $25,000 estimate==. See *Swenson v. Bushman Inv. Props. Ltd*., No. 1:10–CV–00175–EJL, 2013 WL 6491105, at *4 (D.Idaho Dec. 9, 2013) (unreported) (reducing bond from $50,000 to $25,000 because appellees "have not offered any indication of how they arrived at the requested $50,000 bond amount, and have not detailed the precise costs they expect to incur on appeal"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09–MD–2023 BMC, 2013 WL 4735641, at *3 (E.D.N.Y. Sept. 3, 2013) (reducing $25,000 bond amount, which appellees "failed to justify," to $5,000 for printing and copying appellate record). And, although Plaintiffs point to a number of cases in which a district court imposed an appeal bond for $25,000 in printing, copying, and record preparation costs, Plaintiffs have not explained how the costs at issue in those cases are similar to the costs Plaintiffs expect to incur here. See *In re Bayer Corp*., 2013 WL 4735641, at *3.

Accord:  *Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.), supra*, at *4:

> The district court abused its discretion by requiring the objectors to post $15,000 appeal bonds given that the only applicable fee-shifting statute is Fed. R. App. P. 39. Accordingly, we vacate the district court's May 29, 2012, order.

Here, Rev. Sheely objected to anything above zero dollars as taxable costs, and despite two subsequent filings by class plaintiffs' counsel—a motion for bond as to Troyan, *et al.* and a reply in support of bond as to Rev. Sheely—not a penny of actual, estimated cost was ever identified.

**B. The district court erred, as a matter of law, in including $825,000 in administrative costs as a component of an appeal bond.**

F.R.A.P. 7 limits taxable costs, and thus appeal bonds, to costs or fees allowed by rule or statute. *BDT Prods., Inc v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005). Judge Pearson cites *In re Cardizem, supra,* for the notion that "delay costs" can be included in an appeal bond (ECF No. 733, PageID#.51935-6). But a later decision in the same case, *In re Cardizem CD Antitrust Litigation*, 481 F.3d 355, 361-2 (6th Cir. 2004), put the first decision in its proper context:

> [W]hen this case initially came before our court, we held that the district court was entitled to include Rust's projected "administrative costs" as part of the Rule 7 appeal bond entered against Sams under Tennessee Code §47-18-109. *Cardizem*, 391 F.3d at 817-18. * * * To begin, the appellees did not seek, and they did not obtain, costs from the district court under the Tennessee law — whether under the law-of-the-case doctrine or under any other doctrine. Instead, they asked for $290,363.73 of attorneys fees/ costs under the statute, identified as those attributable to preparation for the first appeal by the state law plaintiffs and attorneys general. In their application, they then distinguished this amount from the $255,683.10 in "expert witness expenses" requested for "Rust's administrative costs" under § 1920(6). JA 657-58.

Here, in contrast, no statute cited by class counsel or Judge Pearson—whether federal or Ohio—authorizes class plaintiffs, as appellees, to recover anything like "administrative costs" relating to appeal. Indeed, Judge Pearson herself (ECF No. 733, PageID#.51935-6) recognized this limitation of *Cardizem* (highlighting added):

The Sixth Circuit in *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004), permitted delay costs in a $174,429 appellate bond because the underlying statute permitted the prevailing party on appeal to recover any damages incurred, including reasonable attorneys' fees and costs.

Absent such a statute, so-called "administrative costs" are simply not within the scope of F.R.A.P. 7, as multiple courts of appeal have concluded:

Although an issue of first impression in the Tenth Circuit, other circuit courts addressing the meaning of "costs on appeal" have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute. This is true even though the circuits disagree as to precisely what costs a Rule 7 appeal bond can cover. * * * Other circuits permit an appeal bond also to cover costs which are expressly recoverable "as costs" under the substantive statute underlying the claims at issue. See *Adsani*, 139 F.3d at 71–75 (2d Cir.); see also *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 953–54 (9th Cir.2007); *Young*, 419 F.3d at 1203–04 (11th Cir.) (applying *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1328–35 (11th Cir.2002)); *Int'l Floor Crafts, Inc. v. Dziemet*, 420 Fed.Appx. 6, 17 (1st Cir.2011) (unpublished). The Sixth Circuit goes further, permitting an appeal bond to cover appellate attorneys' fees recoverable under the substantive statute underlying the litigation, even if that statute does not expressly state that those fees can be recovered "as costs." *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 815–18 & 817 n. 4 (6th Cir.). And the First Circuit, contrary to several other circuits, permits an appeal bond to cover attorneys' fees recoverable under Fed. R.App. P. 38, which provides that "[i]f a court of appeals determines that an appeal is frivolous, it may ... award just damages and single or double costs to the appellee," if there is "a real possibility" that the court of appeals will deem the appeal to be frivolous. *Sckolnick v. Harlow*, 820 F.2d 13, 14–15 (1st Cir.1987) (per curiam). But see *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298–99 (5th Cir.2007) (per curiam) (holding an appeal bond cannot cover appellate attorneys' fees under Fed. R.App. P. 38); *Azizian*, 499 F.3d at 954, 960–61 (9th Cir.) (same); *In re Am. President Lines*, 779 F.2d at 716–17 (D.C.Cir.) (same).

Circuit courts, in any event, consistently define "costs on appeal" for Rule 7 purposes as appellate costs expressly provided for by a rule or statute. But Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals, to recover the cost of notifying class members of those merits appeals or to recover the cost of maintaining the class settlement fund pending the merits appeals. Therefore, the district court erred in requiring Objectors to post an appeal bond covering these costs.

*Tennille, supra*, 774 F.3d 1254-5 (highlighting added).

The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. P. 39 unless such expenses may be shifted pursuant to another statute. * * *

The district court abused its discretion by requiring the objectors to post $15,000 appeal bonds given that the only applicable fee-shifting statute is Fed. R. App. P. 39. Accordingly, we vacate the district court's May 29, 2012, order.

*Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.), supra* at *4

(highlighting added).

We next address the district court's imposition of a $49,156 appeal bond under Rule 7 of the Federal Rules of Appellate Procedure.* * * The remaining $46,872, according to the district court, is included in the bond to cover "the financial harm the class will suffer as a result of the delay caused by the appeal," such as disruptions in the claims process, hindered distribution of settlement funds to class members, and the administrative costs of maintaining the settlement website and toll-free telephone number. * * * Appellees * * * [cite] a myriad of district court opinions and one Third Circuit opinion—all unpublished—allowing Rule 7 appeal bonds to include delay-based administrative costs.[8]

---

[8] The district court here likewise cites a number of district court decisions, all

The issue is one of first impression in our Court: whether costs associated with delays in administering a class action settlement for the length of a class member's appeal may be included in an appeal bond under Federal Rule of Appellate Procedure 7. * * *

* * * Appeal bonds are a type of guarantee for an appellee that an unsuccessful appellant can pay the costs the appellee incurs as a result of the appeal. *Tennille v. W. Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014). Appellate courts generally limit "costs on appeal" to "costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Id.*; see also *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 953 (9th Cir. 2007) (allowing attorneys' fees in a Rule 7 bond only when they are included as recoverable costs under an applicable fee-shifting statute); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) (same); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam) (limiting "costs on appeal" under Rule 7 to "those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39"). The Sixth Circuit, for example, upheld the inclusion of delay-based administrative costs in an appeal bond in part because the applicable state law provided for the prevailing party on appeal to recover "*any damages incurred*, including reasonable attorney's fees and costs." *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 817–18 (6th Cir. 2004) (emphasis added). By the same logic, the Tenth Circuit reversed an appeal bond that included delay costs, as no rule or statute applied allowing for their recovery. *Tennille*, 774 F.3d at 1255.

We find our sister circuits' approach sensible and fair. By linking the amount of the bond to the amount the appellee stands to have reimbursed, the rule secures the compensation due to successful appellees while avoiding creating "an impermissible barrier to appeal" through overly burdensome bonds. See *Adsani*, 139 F.3d at 76. Accordingly, we hold that "costs on appeal" for Rule 7 purposes include only those costs that the prevailing appellate litigant can recover under a specific rule or statute applicable to the case at hand. This approach is consistent with our recent ruling in *In re Uponor,*

---

predating both *Tennille* and *Sciaroni*, as well as *Uponor*

*Inc.*, *F1807 Plumbing Fittings Products Liability Litigation*, 716 F.3d 1057, 1062 (8th Cir. 2013). In *Uponor*, * * * the class members argued that the bond was excessive because, among other reasons, it improperly included delay-based administrative costs. We agreed, * * * *Uponor*, 716 F.3d at 1062. Though we did not directly address the question this case presents (as the parties did not pursue the matter following our stay), our reduction of the bond in *Uponor* to reflect only the direct appeal costs suggests that the more tenuous costs of administration are properly excluded in an appeal bond.

In light of our holding, we reverse and remand for the district court to reduce the Rule 7 bond to reflect only those costs that Appellees will recover should they succeed in any issues remaining on appeal following the district court's reconsideration of class certification.

*Sciaroni v. Consumer Plaintiffs (In re Target Corp. Customer Data Sec. Breach Litig.)*, 847 F.3d 608, 614-5 (8th Cir. 2017) (highlighting added). And the $825,000 figure is just another number plucked out of thin air by a claims administrator that was ultimately removed for cause by the district court.

So, as a matter of law, each appeal bond component in this case exceeds the parameters allowed by F.R.A.P. 7.

## C. The other reasons advanced by the district court for imposing an appeal bond are either inapposite, illogical, untrue, or irrelevant.

Inasmuch as each appeal bond component—$25,000 for taxable costs and $825,000 for "administrative costs"—is improper, Judge Pearson's reasons for imposing an appeal bond are irrelevant; predicating an appeal bond on things outside F.R.A.P. 7's scope is legal error.

But those additional reasons are also inapposite or illogical (or both).  For example, Judge Pearson first addresses the allegation—withdrawn by class counsel—that undersigned counsel pursued Rev. Sheely's appeal without client permission (ECF No. 733, PageID#.51928-9).  Given that the allegation was withdrawn (after Rev. Sheely filed a sworn declaration confirming his authorization of appeal), it is telling that Judge Pearson beats such a dead horse, meanwhile misconstruing Rev. Sheely's declaration (ECF 660-1, PageID#.46311), which in context avers:

> 13.  I submit this declaration to clarify my understanding of the situation and my current stance regarding the appeal bond and appeal process; I respectfully ask for consideration of my circumstances and for the court to recognize the impact of my health issues as whether or not to require a bond for anyone to appeal. Please take into consideration that I am suffering from a plethora of physical impairments caused by the exposure to toxic chemical contamination and as such I cannot continue this process with my health conditions and a bond requirement. The bond requirement added insult to injury for us. Therefore, I choose not to pursue this appeal.

That final sentence clearly assumes (incorrectly) bond has been required, and announces that, consequently, Rev. Sheely must withdraw his appeal.  Obviously, Rev. Sheely conflated a motion for bond with an order for bond.  Any other reading renders his entire Declaration nonsensical.  If withdrawing his appeal, Rev. Sheely had no need (a) to respond to the motion for bond or (b) provide a declaration beyond the final sentence of ¶13.  Even opposing counsel did not indulge that

fanciful reading initially (ECF No. 667). So Judge Pearson's misinterpretation merely reveals her hostility to these Objectors.

Judge Pearson next discusses appellant Carly Tunno's standing to appeal—Scott Fenwick filed another hearsay declaration, asserting Tunno failed to object to the settlement (ECF No. 667-1). But Tunno's declaration details how, per the court-approved class notice, she timely tendered her objections to Fenwick's employer in New York, where Kroll could lose or "conveniently misplace" them (ECF No. 711, PageID#.51592-6). Ignoring the presumption Tunno's objections were delivered, *Dunlop v United States*, 165 U.S. 486, 495 (1897) ("Thus, if it be shown that a letter, properly stamped, has been mailed, there is a presumption that it reached the person addressed; * * *."); *United States v. Chem. Found*., 272 U.S. 1, 15 (1926)[9], and despite having neither factual basis nor legal justification for rejecting Tunno's declaration (Judge Pearson could not do so without an evidentiary hearing[10]), Judge Pearson asserts this indicates "bad faith or vexatious conduct" that "weighs in favor of imposing an appeal bond." Again, we have a district judge attempting to usurp an appellate court's right to determine an appellant's standing. Importantly, <u>in their briefs on appeal, neither class plaintiffs</u>

---

[9] Duly argued to Judge Pearson (ECF No. 725-1, PageID#.51729-30), and studiously ignored.

[10] Required by *McKentry v Sec'y of Health and Human Services*, 655 F.2d 721, 724 (6th Cir. 1981) when a litigant purports to rebut the presumption that mail has been duly delivered by the Postal Service.

nor Norfolk Southern challenged Tunno's standing to appeal, so utilizing this to declare the appeal taken in "bad faith" is inappropriate.

Judge Pearson proceeds to note appellate review of class action settlements is for abuse of discretion, opines she did not abuse her discretion, and thus concludes the " 'merits of the appeal' " "weighs in favor of imposing bond." (ECF No. 733, PageID#.51930-1). Here, despite having been provided the Troyan *et al.* brief on appeal (ECF No. 725-1) to show appellants have made good faith, well-supported arguments for reversal (and for assignment to a different judge on remand), Judge Pearson completely ignores those arguments.

Next, Judge Pearson claims—again without record support—class counsel have exceeded the $18 million of settlement funds reserved for costs, and that "appeal costs increase the likelihood of that overage." (ECF No., 733, PageID#.51932). But not only is there no competent evidence the appeal will increase costs, the only such "costs" might be attorney fees (when 127 class counsel attorneys hire outside appellate counsel). But absent a fee shifting statute, *Cardizem, supra*, this is class counsel's problem—they'll pay appellate counsel out of their $162 million fee award. This has no proper relationship to an appeal bond.

Judge Pearson contends that appellants filing their appeal briefs within the time limits of F.R.A.P. 31(a)(1) somehow "belies their argument that an appeal bond would be a barrier" (ECF No. 733, PageID#.51932-3). However, class

30

counsel's district court motions for appeal bond did not stay this Court's appellate process. Appellants' timely filing of appellate briefs in no way demonstrates their financial ability to post an $850,000 bond.

Nor does the fact appellants have not sought *forma pauperis* status here indicate ability to post an $850,000 bond. The filing fee for two appeals is $1210[11], less than $^1/_{700}$th of $850,000. Despite acknowledging all five (5) appellants filed declarations of inability, singly or in combination, to post bond of $850,000, Judge Pearson, without evidentiary hearing, "finds" the contrary using specious "reasoning".

Clearly, Judge Pearson is offended appellants have the temerity to appeal her rulings, to argue she abused her discretion, or to charge her with legal error. She has attempted to impede appellants' exercise of their statutory right of appeal.

"A court is 'without right to * * * put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered.' " *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974). Manufacturing from fallacious reasoning

---

[11] Per 6 Cir. R. 46(b) and (c) and Model Rule of Professional Conduct 1.8(e)/Florida Rule 4-1.8(e) undersigned counsel advanced those filing fees. So the fact those fees were paid provides zero indication of *appellants'* financial abilities.

financial ability no appellant possesses does exactly that, and was so intended by Judge Pearson.  See appellants' briefs on appeal, exposing Judge Pearson's blatant bias against them (Rev. Sheely's brief, pp. 46-52; Troyan *et al.* brief, pp. 48-53).

Here, this Court is better placed to evaluate the merits of this appeal.  As recognized in *Schmidt v. FCI Enterprises LLC, supra*, 3 F.4th at 100-1, an appeal bond should not be enforced where appellants raise "legitimate questions", even if all but one ultimately results in no relief.  "[W]e are hesitant to foreclose a meritorious appeal based on the appellant's alleged inability to pay." citing "*Lindsey v. Normet*, 405 U.S. 56, 79 (1972) (finding an equal-protection-clause violation when indigent appellants must pay double bond to bring certain eviction appeals)."  The very fact class counsel retained outside counsel for appeal, and sought additional time to brief these supposedly "meritless" appeals, should signal to any fair-minded jurist that requiring an appeal bond herein cannot be justified.

**Issue III:  On remand, this case should be reassigned to a different judge.**

**Standard of Review**

This Court has authority pursuant to 28 U.S.C. § 2106 to remand the case to a different district judge, This extraordinary power should rarely be invoked, and then only with the greatest reluctance. *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 683 (6th Cir.2002); *Solomon v. United States*, 467 F.3d 928, 935

(6th Cir.2006).  The factors governing such a request are:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id*.; accord: *Brown v. Crowley*, 312 F.3d 782, 792 (6th Cir.2002).

If this Court detects bias, however, reassignment may be ordered under 28 U.S.C. §144.

## Discussion

Particularly since entry of final judgment, Judge Pearson's antipathy toward objectors generally has blatantly manifested.  During an October 1, 2024 post-judgment hearing (to which undersigned counsel was not invited), Judge Pearson, gratuitously impugned undersigned counsel (ECF No. 566, PageID#.14632)

> I know there was already a notice of appeal, and I know it was filed by someone who wasn't even courageous enough to sit inside of the bar[12] or speak with the Court beyond being invited to do so[13].

---

[12] This infamy represents a *volte face*—during the September 25, 2024 hearing, Judge Pearson recognized undersigned counsel's seating choice merely as indicating he did not intend to offer oral argument, not as insulting the court (ECF No. 533, PageID#.14433).

[13] Having submitted objections and arguments in writing and heard Judge Pearson state on the record "I have read what's been submitted" (ECF No. 553, PageID#.4437), undersigned counsel saw no compelling reason to repeat himself orally, or subject himself voluntarily to the demeaning treatment visited upon attorney Abraham.

After *ex parte* communications with class counsel (Mr. Katz), on October 1, 2024, Judge Pearson scheduled a hearing for October 3, 2024, and instructed Mr. Katz to notify undersigned counsel, David Graham. Mr. Katz represented during the October 3 hearing he had e-mailed Graham on October 1[14] and 3, without response (ECF No. 688, PageID#.51069-70). *Defense counsel* creditably noted October 3 was Rosh Hashanah, and that Graham was understood to be observant (*id.*, PageID#.51070). Noting acerbically Oct. 1 was not a religious holiday (*id.*, PageID#.51071), Judge Pearson stated she had listened to the radio interviews of both Rev. Sheely and undersigned counsel's Oct. 1 interview (*id.*), and that Graham had not advised of unavailability (*id.*, PageID#.51071-2)[15].

Mr. Katz then represented Rev. Sheely had been heard on radio saying he instructed undersigned counsel not to appeal on his behalf (*id.*, PageID#.51072), and inquired as to Judge Pearson's attitude toward appeal bonds (*id.*, PageID#.51073).

Judge Pearson proceeded to advise class counsel what steps to take to forestall pursuit of this "improvidently filed appeal" so as to circumvent her limited post-appeal jurisdiction (*id.*, PageID#.51073-4), even volunteering "to

---

[14] Katz's October 1 e-mail was a demand that Sheely's appeal be withdrawn within 3 hours 32 minutes, *with no mention of a hearing being scheduled for October 3*.
[15] Undersigned counsel is hard pressed to understand how or why he could/should provide notice of unavailability without first receiving notice of hearing.

manipulate the date for responding" by reducing the time allowed (*id*., PageID#51077) (which she later did, allowing undersigned counsel less than 30 hours to answer the motion for appeal bond).

On October 7, 2024, Mr. Katz duly filed a motion (ECF No. 567, PageID#.14646) to require Rev. Sheely to post an $850,000 appeal bond. In the supporting memorandum (ECF No. 567-1, PageID#.14648), citing no authority or justification for shortening the standard 14 days under L.Civ.R. 7.1(d) (knowing he needed none), Katz requested Judge Pearson require response by 4:00 p.m. October 9. On October 8, Judge Pearson duly ordered any answer be filed by 4:30 p.m. October 9 (ECF 573).

Judge Pearson's grossly unfair treatment of Rev. Sheely's efforts to oppose the motion are detailed in his separate brief in Docket No. 24-3852 (pp. 47-48). But as concerns Troyan, Lynch, Freeze and Tunno, on November 1, 2024, Judge Pearson *sua sponte* ordered class counsel to file a reply regarding appeal bond, addressing both the revised response AND this separate appeal (ECF No. 570)— thereby precluding objectors Troyan, Freeze, Lynch and Tunno from addressing the reply (ECF No. 667) even though it raised new issues and arguments as to *them* specifically (*id*., PageID#.46371-46373) and was supported by a new declaration (ECF No. 667-1) addressing appellant Tunno.

*Ex parte* communication is the only reasonable explanation for Judge Pearson's advance knowledge of Mr. Katz's substantive topic or her review of radio broadcasts prior to the Oct. 3 hearing[16].  Judge Pearson also accepted Mr. Katz's incorrect version of the claimed Katz-Graham e-mails.  She next, literally and on the record, conspired with Mr. Katz on ways to overcome her jurisdictional limitations, while *sua sponte* offering Katz a blueprint both for what to do and how to procedurally disadvantage Rev. Sheely by reducing the time for response.  Judge Pearson exacerbated that unfair treatment by suddenly applying local court rules in an inconsistent fashion regarding pages allowed, spacing of quotations and footnotes, and the leeway accorded all other practitioners making good faith effort to comply with those rules. And then she ordered an appeal bond based on no competent evidence in an amount unjustified by any fact or analysis.

Concerning the three factor test, factor two, the appearance of justice, clearly applies.  Remand will occur (in relation to extension of time) only because this Court concludes Judge Pearson did not exercise her discretion because she disregarded this Court's March 21, 2025 order as improvidently issued.

As this Court commented in *John B. v. Goetz*, 626 F.3d 356, 365 (6th Cir. 2010), also a class action:

---

[16] During the October 1 hearing Judge Pearson even thanked class counsel and Norfolk Southern's counsel for having "consulted with" her.  (ECF No 566, PageID#.14633).

> We are mindful that as appellate judges, we cannot manage litigation as trial judges do. But despite our recognition of our role, there are occasions when we must intervene. * * * This situation combines serious management failures, fundamental misunderstandings that potentially prejudice defendants, and a developing adversarial relationship between the judge and the defendants. Here, the unusual decision to reassign the case is justified.

Accord: *Lavin v. Husted*, 764 F.3d 646, 651-653 (6th Cir. 2014) (concluding reassignment necessary "to avoid the appearance of partiality" and citing *Williams v. Renal Care Grp*., 696 F.3d 518, 532 (6th Cir. 2012) and *Rorrer v City of Stow*, 743 F.3d 1025, 1050 (6th Cir. 2014).

*This* IS that rare case in which, however reluctantly, this Court must remand to a different judge.

## CONCLUSION

The March 30, 2025 Order of the district court (ECF No. 923), denying an extension of time for appeal of the bond order, should be reversed, and the underlying January 19, 2025 Order (ECF No. 733) imposing appeal bond should be vacated as being in violation of F.R.App.P. 7. In the event of any remand, the matter should be assigned to a different judge.

Respectfully submitted,

/s/ David M. Graham, *pro hac vice*
Attorney for Objectors-Appellants Sheely, Troyan, Lynch, Freeze and Tunno
210 E. Forsyth St.
Jacksonville, FL 32202
(904) 567-6529

**CERTIFICATE OF COMPLIANCE per FRAP 32(g)(1) and 6 Cir. R. 32(a)**

David Graham, appearing *pro hac vice*, certifies, under FRAP 32(a)(7)(B) that this Brief contains 10,283 words, inclusive of headings, footnotes, citations and quotations, as counted by Microsoft Word 2010, the word processing software used to create this Brief. The typeface is Times New Roman 14 point, a serif font in conformity with FRAP 32(a)(6).

By:  /s/ David M. Graham                              Dated:  June 30, 2025
David M. Graham, *pro hac vice*
Attorney for Objectors-Appellants Sheely, Troyan, Lynch, Freeze and Tunno

# ADDENDA

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## under 6 Cir. R. 28(b)(1)(A)(i) and 6 Cir. R. 30(g)(1)

**ECF No    Description**

28    4-5-2023 Order designating class counsel

30    5-2-2023 Order consolidating cases

31    5-4-2023 Master Consolidated Class Action Complaint

68    5-31-2023 Order closing cases as subsumed by Master Class Action Complaint

98    Case management conference plan/order

102    6-30-2023 stipulated order re inadvertent disclosure of privileged or protected information

124    7-28-2023 Order re wording of protective order

127    8-2-2023 Protective order re experts

128    Motion for filing of First Amended Master Consolidated Class Action Complaint and jury demand

137    8/14/2023 Order allowing filing of First Amended Master Consolidated Class Action Complaint and jury demand

138    First Amended Master Consolidated Class Action Complaint and jury demand

163    8/31/23 Order consolidating additional underlying individual case based on class action order ECF No 28

213    9/28/2023 Order substituting Brenda Williams for Ms. Jack and amending

ECF 138 accordingly

266     4/5/2023 Order consolidating additional underlying individual case based on class action order ECF No 28

425     3-13-2024 Order dismissing superseded underlying individual cases based on class action order ECF No 28

428     3-13-2024 Order granting summary judgment in favor of Norfolk Southern and dismissing Count XIII but providing for medical monitoring as element of damages for any underlying Ohio tort

448     Order closing superseded underlying individual cases based on class action order  ECF No 28

452     Motion for preliminary approval of settlement, appointment of lead class counsel, and approval of notice

452-1 Brief in support of motion for preliminary approval of settlement

452-2 Class Action Settlement Agreement

452-3 Order of Preliminary Settlement

452-4 Finnegan declaration and proposed notice plan

452-5 Long Form Notice

452-6 Short Form Publication Notice

452-7 Proposed Order Granting Preliminary Approval of Settlement, etc.

458     5-21-2024 Order granting preliminary approval of settlement

476     Notice of filing declarations from Class Action Settlement Administrator

476-1 Finnegan Declaration regarding notice compliance

476-2 Fenwick Declaration regarding notice compliance

479  6-28-2024 Order closing related cases per ECF No 28

483  Motion for attorney David Graham to appear *pro hac vice*

485  Objection to class settlement agreement and motion to enlarge time to opt out by Rev. Sheely

486  Objection to class settlement agreement and motion to enlarge time to opt out by Jami Wallace

487  Objections filed by class members represented by attorney Daniel Abraham

488  7-2-2024 Order granting attorney David Graham permission to appear *pro hac vice*

489  Objection filed by class member Jennifer Gray

490  Objection filed by class member Tracy Mascher

491  Objection filed by class member Gregory Mascher

493  Objection filed by class member Tamara Lynn Freeze

495  Class plaintiffs' response to objections (ECF Nos. 485 and 486)

495-2 Unity Council (including all appellants) questions regarding settlement

495-3 Class counsel's responses to Unity Council's questions

500  7-22-2024 Reply to response to motion to enlarge time to opt out of settlement

502  7-23-2024 Motion to extend time to respond to Rev. Sheely's objections

503  8-5-2024 Rev. Sheely motion to extend time for reply

XXX  8-7-2024 order granting extension of time for reply to 8-19-2024

508   8-18-2024 Reply to class plaintiffs' motion to enlarge time to opt out of settlement

510   8-20-2024 Order denying motion to enlarge time to opt out of class settlement

516-6 Objections of Zsuzsa Troyan, Carol Lynch, and Tamara Freeze

518   9-6-2024 Motion for approval of final settlement

518-1 Class plaintiffs' memorandum in support of final approval of settlement

519   9-6-2024 Motion for approval and implementation of plan of distribution

520   9-6-2024 Motion for award of attorney fees and expenses

520-1 Brief in support of attorney fees

520-4 Michelle Krantz declaration

525   Supplement to motion for approval of plan of distribution

529   Response to Motion for Final Approval of Settlement and brief in support of objections by Daniel Abraham

530   Reply in support of Motion for Final Approval of Settlement by co-lead counsel

534   Declaration of Stephen Petty

536   Declaration of Scott Smith

537   Declaration of Dr. George Thompson

537-1 *Curriculum vitae* of Dr. George Thompson

539   9-23-2024 Order allowing counsel for objectors to more fully explain clients' positions by serving and filing sworn declarations or affidavits before 9-24-2024 4:30 p.m. EDT

540    Declaration of Stephen Petty and Index of Exhibits

542    Supplemental declaration of Scott Smith

543    Motion for leave to file supplemental objection to settlement post-deadline by Rev. Sheely with memorandum

543-1 Exhibit A  Supplemental Objection to Class Settlement Agreement

543-2 Declaration of Scott Smith

543-3 Declaration of Dr. George Thompson

543-4 Declaration of Stephen Petty

543-5 Supplemental Declaration of Scott Smith

547    Declaration of Robert Kroutil

550    Declaration of Lesley Pacey

550-1 Affidavit of Robert Kroutil

550-2 Exhibit letter—rebuttal to denial of whistleblower allegations

551    Notice of filing by Daniel Abraham

551-1 Declaration of Stephen Petty

551-2 Exhibit:  index for Stephen Petty

551-3 Declaration of Scott Smith

551-4 Exhibit:  index for Scott Smith

551-5 Supplemental Declaration of Scott Smith

551-6 Affidavit of Dr. George Thompson

551-7 Dr. George Thompson curriculum vitae

552   Notice of exclusions to class action settlement by co-lead counsel

553   Transcript of fairness hearing 9-25-2024

555   9-27-2024 order approving plan of distribution

556   9-27-2024 order approving class counsels' fees

557   9-27-2024 order for final approval of class settlement

558   Notice of appeal (Rev. Sheely)

559   Norfolk Southern motion to stay 3rd party complaint pending effective settlement date

563   10-3-2024 Order for telephonic conference

566   Transcript of telephonic conference held on 10-1-2024

567   Class Plaintiffs' motion to require Rev. Sheely to post appeal bond

567-1 Memorandum in support of motion to require Rev. Sheely to post appeal bond

567-2 Declaration of Scott Fenwick in support of motion to require Rev. Sheely to post appeal bond

570   Notice of appeal by Tamara Freeze, Zsuzsa Troyan, Sharon Lynch, Carly Tunno

573   Order reducing time for answer to motion to require Rev. Sheely to post appeal bond

614   Answer to motion to require Rev. Sheely to post appeal bond

614-1 Memorandum in support of answer [STRICKEN]

614-2 Declaration of Rev. Sheely

614-3 Motion to file memorandum of law in excess of 15 pp

648    Order rejecting motion to exceed page limits

649    Motion for leave to file Memorandum of Law in Excess of 15 pp by Rev. Sheely

650    10-15-2024 Order denying Motion for leave to file Memorandum of Law in Excess of 15 pp by Rev. Sheely (ECF 614-1)

660    Response to Motion to Require Rev. Sheely to post appeal bond

661    Request for 9-25-2024 transcript for Appeal by Rev. Sheely

667    Reply brief of class plaintiffs in support of motion for appeal bond

667-1 Supplemental declaration of Scott Fenwick re appeal bond

688    Transcript of 10-3-2024 hearing re Rev. Sheely's appeal

711    Addenda to District Court record per 6 Cir. R. 28(a)(1)

712    Designation of Record on Appeal re 558 Notice of Appeal, 570 Notice of Appeal

721    Order to Troyan, Lynch, Freeze and Tunno to answer motion for appeal bond

725    Response to motion for appeal bond filed by Troyan, Lynch, Freeze, and Tunno

733    Order granting motions for appeal bond as to Sheely, Troyan, Lynch, Freeze and Tunno

876    Motion of appellants Sheely, Troyan, Lynch, Freeze and Tunno for extension of time to appeal bond order

883    Order requiring class counsel to answer 876 by March 28, 2025

893    Class counsel's answer to motion to extend time to appeal bond order

894    Class counsel's answer to motion to extend time to appeal bond order

912    Appellants' reply in support of motion to extend time to appeal bond order

923    Order denying extension of time to appeal bond order

975    Notice of appeal re 923 by Rev. Sheely, Troyan, Lynch, Freeze and Tunno

979    Order suspending and terminating appointment of Kroll Settlement Administration, LLC as Settlement Administrator and approving substitute Settlement Administrator

**Copies of unpublished opinions per FRAP 32.1(b) or 6 Cir. R. 32.1(a)**

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: MAGSAFE APPLE POWER ADAPTER LITIGATION,
NAOTAKA KITAGAWA, Jr.; et al., Plaintiffs - Appellees,
v.
ROBERT JOSEPH GAUDET, Jr., Plaintiff - Appellant,
v.
APPLE, INC., Defendant - Appellee.
NAOTAKA KITAGAWA, Jr.; et al., Plaintiffs - Appellees,
v.
MARIE GRYPHON, Objector, Plaintiff - Appellant,
v.
APPLE, INC., Defendant - Appellee.

No. 12-15757
D.C. No. 5:09-cv-01911-JW
No. 12-15782

FILED: April 24, 2014

NOT FOR PUBLICATION

MEMORANDUM*

Page 2

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted April 8, 2014
San Francisco, California

Before: SILVERMAN, W. FLETCHER, and BYBEE, Circuit Judges.

Objector-Appellant Marie Newhouse appeals the district court's March 8, 2012, order approving a class action settlement agreement and attorneys' fee award

and its May 29, 2012, order requiring Newhouse and other objectors to post appeal bonds. We Vacate both orders and remand for further consideration. Objector-Appellant Robert Gaudet, Jr. appeals the aforementioned orders as well as the

Page 3

district court's August 22, 2012, order striking his objection to the settlement agreement and attorneys' fee award. We also vacate that order.[1]

## I. APPEAL BOND

### A. Appeal Bond Order

"[W]e review objections to the amount of a bond for abuse of discretion. However, the meaning of the phrase 'costs on appeal' [in Fed. R. App. P. 7] is a question of law that we review de novo." *Azizian v. Federated Dep't Stores, Inc*., 499 F.3d 950, 955 (9th Cir. 2007) (internal quotation marks and citations omitted).

The plaintiffs filed a motion to require each objector to post a $200,000 appeal bond, asserting that they anticipated incurring $25,000 in expenses and $175,000 in attorneys' fees on appeal. The district court correctly reasoned that the bond could not secure anticipated attorneys' fees because no statute authorizes shifting attorneys' fees from objector-appellants to plaintiff-appellees under these circumstances. See id. at 959-60. The district court erred, however, in not applying the same logic to the plaintiffs' request for expenses.

A district court may always include in an appeal bond the costs specified in Fed. R. App. P. 39. See id. at 955-56. Yet these costs rarely exceed a few hundred

Page 4

dollars when taxed against an appellant. The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. P. 39 unless such expenses may be shifted pursuant to another statute. See id. at 959-60. The fee-shifting statutes invoked by the plaintiffs—including 15 U.S.C. § 2310(d)(2), Cal. Civ. Code § 1780(e), and Cal. Civ. Code § 1794(d)—are asymmetrical because they permit fee shifting only from losing defendants to prevailing plaintiffs. Expenses, like attorneys' fees, cannot be shifted from losing objectors to prevailing plaintiffs under asymmetrical statutes. See *Azizian*, 499 F.3d at 959-60.[2]

The district court abused its discretion by requiring the objectors to post $15,000 appeal bonds given that the only applicable fee-shifting statute is Fed. R. App. P. 39. Accordingly, we vacate the district court's May 29, 2012, order. On remand, the district court may impose an appeal bond that more accurately reflects the amount that a prevailing appellee would be entitled to recover from a losing appellant under Fed. R. App. P. 39.

B. Order Striking Gaudet's Objection

Page 5

We also vacate the district court's August 22, 2012, order striking Gaudet's objection to the settlement agreement and attorneys' fee award. The district court lacked the authority to remove the basis for Gaudet's appeal as a sanction for his failure to post the bond because "an appellant is not required to post a Rule 7 bond to perfect [his] appeal." *Id*. at 961. The district court did not abuse its discretion in deciding to hold Gaudet in contempt for failing to comply with the appeal bond order. Rather, the district court erred by imposing a sanction that precluded Gaudet from appealing its judgment. On remand, the district court may exercise its discretion to impose any appropriate sanction for violations of its orders.

C. Dismissal of Gaudet's Appeal

"Where an appellant has failed to pay an appeal bond, it is within our sound discretion to dismiss the appeal." *Id*. After weighing the factors set out in Azizian, we decline to dismiss Gaudet's appeal. We are troubled by Gaudet's failure to proffer any amount toward an appeal bond. See *id*. at 962. Gaudet did, however, actively contest the bond by raising reasonable arguments before the district court and filing a motion with this court to stay the district court's order. See *id*. Although he did not make himself available for an in-person deposition concerning his ability to pay because he had moved to Ireland, Gaudet disclosed his financial information and informed plaintiffs' counsel that he would submit to a telephonic

Page 6

deposition. Gaudet's noncompliance is far from ideal, but it does not warrant dismissing his appeal under these circumstances because he "did not simply

49

'ignore [the] order,' but rather made legitimate efforts to reduce its amount." *Id.* (alteration in original) (internal citation omitted).

## II. SETTLEMENT AGREEMENT APPROVAL AND ATTORNEYS' FEE AWARD

### A. Article III Standing

The objectors have Article III standing to appeal the district court's order approving the settlement agreement and attorneys' fee award. This case is distinguishable from *Glasser v. Volkswagen of America, Inc*., 645 F.3d 1084 (9th Cir. 2011). There, the objector appealed only the district court's order awarding attorneys' fees and not its earlier order approving the settlement agreement. Id. at 1087-88. Here, the objectors appealed the district court's order approving the settlement agreement and objected to the terms of the agreement before the fairness hearing. A class member has Article III standing to challenge the attorneys' fee award along with the settlement agreement. See *Lobatz v. U.S. W. Cellular of Cal., Inc*., 222 F.3d 1142, 1147 (9th Cir. 2000).

### B. Review of the District Court's Order Approving the Settlement Agreement and Attorneys' Fee Award

Page 7

"We review approval of a class action settlement for a clear abuse of discretion." *Rodriguez v. W. Publ'g Co*., 563 F.3d 948, 963 (9th Cir. 2011) (internal quotation marks and citation omitted). "We also review for abuse of discretion a district court's award of fees and costs to class counsel, as well as its method of calculation." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 940 (9th Cir. 2011).

The district court abused its discretion in approving both the settlement agreement and attorneys' fee award because it failed to follow the process set out in Bluetooth. We vacate the March 8, 2012, order and remand so that the district court can fully consider the factors affecting the fairness of class action settlement agreements articulated in Bluetooth.

The district court's order accepted the lodestar of $1,986,362.00 submitted by plaintiffs' counsel. But the court did not explain why this figure is reasonable

beyond a few boilerplate recitations about the attorneys' skill and the risks of proceeding with the litigation that never reference the specific facts of this case. Under some circumstances, "counting all hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount.'" *Id.* at 942. On remand, the district court should consider whether the lodestar was calculated

Page 8

using reasonable hourly rates and sound billing practices and then assess the lodestar in light of the results obtained for the class. See *id*.

The district court then applied a multiplier that increased the total amount of the attorneys' fee award to $3,000,000 without explaining why a multiplier was necessary to adequately compensate class counsel. If the court determines on remand that a multiplier is appropriate, it should offer an explanation of its decision that is sufficient to "assure itself—and us—that the amount awarded was not unreasonably excessive in light of the results achieved." Id. at 943. We emphasize that Apple's advance agreement to pay class counsel up to $3,000,000 in attorneys' fees and $100,000 in expenses "cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *Id*.

The district court also did not cross-check the attorneys' fee award against the percentage-of-the-recovery method. Although we have "encouraged" rather than required courts to cross-check their calculations, the fact that the court made no mention of the value of the settlement, let alone the percentage-of-the-recovery method, contributes to our determination that we "lack a sufficient basis for determining the reasonableness of the award." *Id*. at 943. The district court conducted the fairness hearing before the claims-submission period closed, leaving us with no reliable way of estimating how many valid claims were submitted or the

Page 9

total amount that Apple intends to pay claimants under the refund component of the settlement agreement. On remand, the district court may find it useful to elicit this information so that it can compare the amount recovered by the class with the amount claimed by class counsel. *Id*. at 942. The district court should also consider the value of the injunctive relief offered by the settlement agreement. Alternatively, the district court might conclude that the percentage-of-the-fund method is ill

suited for evaluating the reasonableness of this particular settlement agreement if it finds that the value of the injunctive relief is unusually difficult to quantify. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The discretion rests with the district court; we merely require that the court scrutinize both the settlement agreement and fee award and offer a specific explanation about why it deems them reasonable.

We also conclude that the district court erred by not addressing the indicia of self-dealing or implicit collusion identified in *Bluetooth*. See *Bluetooth,* 654 F.3d at 947. The court did not assess with specificity whether class counsel received a disproportionate share of the settlement, nor did it mention the clear-sailing provision or the implied reversion clause. The court might find, after conducting a proper inquiry, that the fee award requested by the plaintiffs is proportionate to the value received by the class, that the clear-sailing provision is outweighed by other

Page 10

portions of the settlement agreement, and that a reversion clause is of no concern in an uncapped claims-made settlement. Or the court might conclude that the agreement is tainted by the possibility of self-dealing and "direct the parties back to the negotiating table." *Id*. at 950. Once again, we request only that the court demonstrate that it was "particularly vigilant" in monitoring for self-dealing and implicit collusion. *Id*. at 947.

We do not intend to direct the district court toward a particular result. On remand, the district court "may determine the fee request is excessive but find no further evidence that class counsel betrayed class interests for their own benefit, and thus uphold the agreement while lowering the fee award." Id. at 950. The court could also approve both the fee award and the settlement agreement in their current form after conducting the appropriate inquiry. Id. Or "it may find the fee request excessive and conclude that class counsel therefore negotiated an unreasonable settlement." *Id*. Finally, it might deem the settlement agreement inadequate after considering the factors set out in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

III. CONCLUSION

The district court's judgment is REVERSED. The district court's March 8, 2012, order approving the settlement agreement and attorneys' fee award; its May

29, 2012, order requiring the objectors to post appeal bonds; and its August 22, 2012, order striking Gaudet's objection are VACATED. The case is REMANDED for proceedings consistent with this memorandum.

--------

Notes:

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[1.] The district court had jurisdiction under 28 U.S.C. § 1332(d), and we have jurisdiction under 28 U.S.C. § 1291.

[2.] Cal. Civ. Code § 1780(e) would authorize fee shifting from losing objectors to prevailing plaintiffs if the objector's "prosecution of the action was not in good faith." The district court did not find that either Newhouse or Gaudet were proceeding in bad faith, and such a finding would have been erroneous.

--------