RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

IN RE: EAST PALESTINE TRAIN DERAILMENT

_____

HAROLD R. FEEZLE, SUSAN E. SCHEUFELE, DAVID J. SCHEUFELE, ROLLERENA AUTO SALES, LLC (25-3342), MARILYN FIGLEY, ROSEMARY MOZUCH, CHARLES MOZUCH, JON LUKE AFFELTRANGER, and EDWARD E. BARNHOUSE, on behalf of themselves and all others similarly situated; LAURA MANN (24-3852/3880),

> Nos. 24-3852/3880/25-3342

               *Plaintiffs-Appellees*,

*v.*

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION (24-3852/3880),

               *Defendants-Appellees*,

REVEREND JOSEPH SHEELY (24-3852/25-3342); ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, and CARLY TUNNO (24-3880/25-3342),

               *Objectors-Appellants*.

---

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:23-cv-00242—Benita Y. Pearson, District Judge.

Decided and Filed:  November 5, 2025

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** David M. Graham, Jacksonville, Florida, for Appellants. Paul D. Clement, Matthew D. Rowen, Kyle R. Eiswald, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, Elizabeth Graham, Adam J. Gomez, GRANT & EISENHOFER P.A., Wilmington, Delaware,

Mark Chalos, LIEFF CABRASER HEIMANN & BERNSTEIN LLP, Nashville, Tennessee, Seth A. Katz, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., Englewood, Colorado, Melanie S. Bailey, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., Cincinnati, Ohio, for the Plaintiffs-Appellees.  Alan Schoenfeld, WILMER CUTLER PICKERING HALE AND DORR LLP, New York, New York, Albinas Prizgintas, WILMER CUTLER PICKERLING HALE AND DORR LLP, Washington, D.C., for the Norfolk Southern Appellees.

_____

**OPINION**

_____

THAPAR, Circuit Judge.  A set of objectors to a class-action settlement are over eight months late in paying an $850,000 appeal bond.  Instead of paying up, they moved to extend the time to appeal the bond order—one day late.  Because they're a day late, we can't hear their reasons for being $850,000 short.  We dismiss their appeal of the motion to extend for lack of jurisdiction, and we dismiss their appeals of the settlement for failure to pay the bond.

I.

In February 2023, a Norfolk Southern train carrying hazardous materials derailed near East Palestine, Ohio.  Unfortunately, the clean-up efforts vented toxic chemicals across the surrounding area.  So affected residents and businesses sued the railroad, railcar owners, and other parties in federal court.  The district court consolidated the suits into one master class action.  After months of exhaustive discovery, motions, and mediation, the railroad agreed to pay $600 million to the class.  The district court approved this settlement in September 2024.

Five class members timely appealed.  On January 16, 2025, the district court required these objectors to post an appeal bond of $850,000 by January 30.  *See* Fed. R. App. P. 7.  The bond accounts for $825,000 in administrative costs for delaying a third party's distribution of the class-action settlement, as well as $25,000 in taxable costs.  The objectors didn't post the required bond or proffer a lesser amount—and, over 250 days later, they still haven't.

Three days after the district court issued the bond order, the objectors filed a "Motion to Eliminate or Reduce Appeal Bond" in their pending appeals before our court.  The objectors urged us to construe the motion as a request for a review of the merits of the appeal, not a stay of

the bond order. *See* Reply Br. at 3 n.1, *In re E. Palestine Train Derailment*, No. 24-3852 (6th Cir. Jan. 31, 2025), Dkt. No. 37 ("No appellant either seeks or desires such a stay."); *id.* at 2 (arguing that reading the motion as a stay request was a "putrid red herring" and "defies comprehension by rational minds").

We took them at their word. As a three-judge motions panel explained, absent a separate notice of appeal, "our only avenue to address the appeal bond would [have been] on a motion to stay, which the Objectors have definitively stated is not their intent." Order at 3, *In re E. Palestine Train Derailment*, No. 24-3852 (6th Cir. Mar. 21, 2025), Dkt. No. 47. Even if the objectors had sought a stay of the appeal bond, they still wouldn't have prevailed. Among other problems, they hadn't shown that they were likely to succeed on the merits or faced "irreparable harm, in part because they could still obtain review of the bond order by filing a direct appeal from that order." *Id.* (citing Fed. R. App. P. 4(a)(1)(A), (a)(5)).

The same day our order issued, the objectors moved in the district court to extend the time to appeal the bond order. But they faced a timing problem: Accounting for weekends and federal holidays, the 30-day deadline to file a notice of appeal of the January 16 bond order was February 18. *See* Fed. R. App. P. 4(a)(1)(A), 26(a)(1)(C). And, in turn, the 30 days to request an extension expired on March 20. *See* Fed. R. App. P. 4(a)(5)(A). The objectors moved on March 21 to extend the time to file—one day after Rule 4's final deadline.

The objectors conceded this. As they frankly observed, their motion "was filed 1 day beyond the time allowed." R. 912, Pg. ID 61030. But to excuse their lateness, they latched onto our previous order's statement that "they could still obtain review of the bond order by filing a direct appeal." *Id.* (quoting Order at 3, *In re E. Palestine Train Derailment*, No. 24-3852 (6th Cir. Mar. 21, 2025), Dkt. No. 47). On their read, the motions panel's statement was binding law of the case and thus commanded the district court to allow them to file late.

The district court disagreed. Like both parties, the district court treated the motion as "untimely because it was not filed within the grace period allowed by Rule 4(a)(5)." R. 923, Pg. ID 61237; *see* Fed. R. App. P. 4(a)(5)(A). It viewed the deadlines as binding, so it denied the motion.

The objectors timely appealed. They also requested that the motions panel reconsider its previous ruling, which it declined to do. While those filings were pending, the plaintiffs moved to dismiss the objectors' settlement appeals for failure to pay the appeal bond. We now consider the appeal from the motion to extend time as well as the plaintiffs' motion to dismiss.

II.

Since the deadline to request an extension to file an appeal is jurisdictional, the district court correctly declined to grant the objectors' untimely motion.

Congress has imposed a set of "mandatory and jurisdictional" statutory deadlines for appeals. *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (quotation omitted). By default, parties must appeal "within thirty days after the entry of [a] judgment, order, or decree," except in cases involving the government or a judgment with a delayed notice to the parties. 28 U.S.C. § 2107(a), (b), (c)(1). District courts may, however, "extend the time for appeal upon a showing of excusable neglect or good cause," provided that the litigant moves for an extension "not later than 30 days after the expiration of the time otherwise set for bringing appeal." *Id.* § 2107(c). Since these deadlines are jurisdictional, we may not use our general equitable power to add to the list of enumerated exceptions. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 433 (2011).

These statutory deadlines are codified in the federal appellate rules. Tracking the text of section 2107(a), Rule 4 first provides the default rule that parties in a civil case must file a notice of appeal "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Then, like section 2107(c), it permits district courts to "extend the time to file a notice of appeal" if (i) the movant requests an extension "no later than 30 days after the time prescribed by . . . Rule 4(a) expires," and (ii) "shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A). If the movant makes such a showing, the district court may extend the window to appeal by either 30 days from the original deadline or 14 days from its order, whichever is later. Fed. R. App. P. 4(a)(5)(C).

The deadlines imposed by Rules 4(a)(1) and 4(a)(5)(A) are also jurisdictional. The Supreme Court has explained that "a time limit prescribed only in a court-made rule" is usually a

"mandatory claim-processing rule," not a jurisdictional deadline. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19 (2017). But if that time limit "implement[s] an appeal deadline created by Congress," it's jurisdictional. *In re Tennial*, 978 F.3d 1022, 1026 (6th Cir. 2020). That's the case here: Section 2107(c) requires parties to move for an extension no "later than 30 days" after the deadline to appeal and to show good cause or excusable neglect, and Rule 4(a)(5)(A) operationalizes that deadline by requiring the same. Rule 4(a)(5)(A) imposes a "'specific[]' appeal deadline that is 'set forth in a statute.'" *Id.* at 1026 (quoting *Bowles*, 551 U.S. at 213, 210). So it's equally as "mandatory and jurisdictional" as that statute. *Ultimate Appliance CC v. Kirby Co.*, 601 F.3d 414, 415 (6th Cir. 2010).

In short, district courts lack jurisdiction over late motions to extend—and the objectors' motion was late. The objectors' time to request an extension from the district court's January 16 order expired on March 20. So, as everyone agrees, the objectors' March 21 motion was one day late. Since the deadlines to appeal are jurisdictional, the district court lacked the power to extend their time, even if it had agreed that the objectors' lateness was excusable. *See Bowles*, 551 U.S. at 214. Thus, the district court had no option but to deny the objectors' requested extension for lack of subject-matter jurisdiction.

The objectors argue that the district court had to give them an extension because our prior statement that the objectors "could still obtain review of the bond order by filing a direct appeal" is binding law of the case. No. 25-3342 Appellants' Br. at 14 (quoting Order at 3, *In re E. Palestine Train Derailment*, No. 24-3852 (6th Cir. Mar. 21, 2025), Dkt. No. 47). But our previous statement didn't bind the district court. We lacked jurisdiction *and* the objectors didn't show they were likely to succeed on the merits. So our statement that the objectors also failed to show irreparable injury because they could move to extend in the district court did "*nothing* to determine the outcome." *Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019). That means it's not part of the law of the case. *See Keahy v. Marquis*, 978 F.3d 474, 481 (6th Cir. 2020). Even if it *were* law of the case, our judgment couldn't expand the district court's jurisdiction with an equitable extension that would override "mandatory" time limits. *Ultimate Appliance CC*, 601 F.3d at 415. Since section 2107 and Rule 4(a)(5)(A) limit the district court's

jurisdiction to timely motions, the district court would lack power to follow any contrary mandate.

It doesn't matter whether the motion to extend was one day, one hour, or one minute late. When the 30 days ended, the district court lost jurisdiction over the objectors' motion to extend their time to appeal the bond order.

III.

At present, the objectors are over eight months late in paying an appeal bond. We have now affirmed the denial of their motion to extend for lack of jurisdiction and denied reconsideration of our order denying the motion to eliminate or reduce the appeal bond. So all that remains is to enforce the January bond order by dismissing their appeals of the final settlement.

"Failure to execute . . . a bond unless exempted by law is grounds for dismissal of an appeal." *Powers v. Citizens Union Nat. Bank & Tr. Co.*, 329 F.2d 507, 508–09 (6th Cir. 1964) (per curiam) (cleaned up). To avoid dismissal, we expect a party contesting the validity of an appeal bond to either seek a stay in the district court or make a good-faith proffer of a lesser amount. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). To determine whether to dismiss, we look to "factors such as [1] the prejudice to the other parties, [2] the demonstrated justification for the failure to post the bond, and [3] the merits of the underlying appeal." *Id.* None of these factors favors the objectors.

*First*, objectors' appeals have delayed disbursement of the settlement funds to about 55,000 injured claimants. As of September 2024, close to 80% of households within 2 miles of the derailment site and about 28% of those within 20 miles had filed claims. By contrast, only 86 of the approximately *half million* eligible class members filed timely objections. Thus, the objections of less than 0.01% of the class now delay the disbursement of direct cash payments to many of the claimants. And those payments are critically important. They will compensate residents near the derailment site for "loss of use and enjoyment, emotional distress, inconvenience, relocation, [and] medical monitoring" stemming from their exposure to dangerous chemicals and will reimburse businesses for "net business loss." R. 553, Pg. ID

14493–95, 14500.  The delay therefore poses overwhelming prejudice by endangering residents' health and the community's financial stability.  *See In re Cardizem*, 391 F.3d at 818.

*Second*, the objectors have no valid justification for failing to pay the bond.  The objectors make two arguments:  First, they argue that their ongoing attempts to reduce the bond and to appeal justifies their nonpayment.  Second, they allege that their inability to pay both invalidates the bond and explains their refusal to pay it.  But neither excuse allows them to ignore a court order.

For starters, we have never found that challenging the validity of a bond is a legitimate reason for refusing to pay it.  *See, e.g.*, *Powers*, 329 F.2d at 508–09 (ordering payment despite a valid appeal); *In re Cardizem*, 391 F.3d at 818 (dismissing for failure to pay a bond despite a pending appeal).  Instead of simply pointing to their unsuccessful motions, the objectors should have moved to stay the bond, requested to reduce it based on their financial declarations, or proffered uncontested portions of it.  Absent good-faith efforts to pay the bond, the objectors' choice to "ignore an order" from the court must have "consequences to [their] appeal."  *In re Cardizem*, 391 F.3d at 818.

For the same reason, the objectors' alleged inability to pay the ordered bond in full doesn't justify their refusal to post *any* amount.  Instead of excusing nonpayment, detailed affidavits demonstrating financial hardship could support a request to reduce, eliminate, or stay the bond.  *Cf. Powers*, 329 F.2d at 508–09 (ordering payment despite asserted unwillingness to pay).  And even if financial hardship could justify nonpayment, the objectors have done little to convince us that they can't post at least some portion of the required amount.  After all, they are not proceeding in forma pauperis—so they have covered, either personally or through counsel, some appeal-related expenses.  And because their attorneys are handling the case on a contingency basis, they likely lack other large, out-of-pocket obligations for the appeal at present.  All in all, the objectors have not adequately demonstrated why they can afford other costs associated with their appeal but not some portion of the bond.  *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016).  So the objectors' ongoing appeals and alleged inability to pay might have justified a stay, reduction, or deferral of the bond—but not outright nonpayment.

*Third*, the objectors are unlikely to succeed on the merits of their challenge to (1) the class notice or (2) the reasonableness of the settlement. We review the district court's factual findings about the adequacy of notice for clear error and the legal conclusion that a particular notice satisfies the requirements of Rule 23 and the Due Process Clause de novo. *See* Fed. R. Civ. P. 23; *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008). And we review the overall reasonableness of a settlement for abuse of discretion, a deferential standard that favors settlement of meritorious class actions. *Fidel*, 534 F.3d at 513–14.; *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007). When determining whether to dismiss, our preliminary assessment of "the merits of the [objectors'] underlying appeal" remains only one factor under consideration. *In re Cardizem*, 391 F.3d at 818.

At the outset, the objectors forfeited most of their objections to the contents of the notice. Before the district court, they challenged only the length of the opt-out period and the notice's lack of information on how settlement payments would be calculated. That focus bars their belated attempts to attack other aspects of the notice provided. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019).

But even setting aside forfeiture, the district court didn't err in approving the settlement notice. To comply with the Due Process Clause and federal procedural rules, notice must be given in a manner that is reasonably calculated to reach and be understood by any named or unnamed class member who may be bound by the settlement. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1); U.S. Const. amend. V; *Fidel*, 534 F.3d at 515. This notice met those requirements. To reach the class, the parties mailed the notice to class members, posted it online, circulated it in local newspapers, and advertised on social media and local television. *See* R. 452-4, Pg. ID 6096–97; R. 553, Pg. ID 14489–90. The notice itself fairly informed class members about the existence and terms of the binding settlement. *See Fidel*, 523 F.3d at 513–15. That notice never needed to include the size of class representatives' awards or the division of attorneys' fees, much less the objectors' hypotheses about strict liability and punitive damages. And the 31-day opt-out period—though shorter than average—left time for the class members to make informed choices about the terms based on the information given.

The objectors next contest the reasonableness of the settlement itself. To assess the reasonableness of a settlement, we consider the factors identified in Rule 23(e)(2), as well as (1) the likelihood of success on the merits of the case, (2) the complexity, expense, and duration of discovery and litigation, (3) the opinions of class members, representatives, and counsel, and (4) the risk of collusion or fraud. *UAW*, 497 F.3d at 631. The likelihood of success is the most important factor because it provides a yardstick against which the benefits of the settlement may be measured. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).

The likelihood-of-success factor cuts against the objectors. Settlement was "particularly sensible" because continued litigation would have significantly delayed residents' resettlement payments without any certainty of yielding a larger award. *UAW*, 497 F.3d at 632; *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) (affirming settlement when its "benefits . . . outweigh the value of the [plaintiffs'] claims"). And the objectors don't raise issues likely to alter that settlement calculus. The gist of their argument is that the district court and class counsel failed to review, credit, and disseminate expert declarations and soil-sampling data about the long-term hazards from environmental toxins. But the class members' expert reviewed the environmental data and reached an informed conclusion about the levels of toxicity in the soil. *See* R. 553, Pg. ID 14486–87 (explaining negotiated soil-sampling protocols); R. 518-10, Pg. ID 11186–91. The existence of contradictory evidence from the objectors' private report does little to undermine the conclusions of the parties' expert. At the end of the day, the parties settled precisely because they felt that $600 million adequately compensated injured individuals given the balance of conflicting evidence. The objectors can't explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations.

The remaining factors strongly favor approving the settlement. Before settlement, the litigation had already produced over a million pages of documents, seventy depositions, and extensive motions practice. Since then, some parties have continued to press crossclaims, culminating in a multi-day jury trial this spring. Despite all that, the class seems largely satisfied: Just 0.18% of eligible households and 0.31% of eligible businesses opted out, while more than 54,000 households—especially those closest to the derailment—have already filed

claims. The discovery, mediation, and settlement process was complex, expensive, and exhaustive, and the class's counsel, representatives, and absent members all support the agreement.

In light of this suit's complexity, we disagree that the district court unreasonably approved the $15,000 incentive payments to class representatives or the $162 million in attorneys' fees paid to class counsel. Accounting for the time, effort, and risk incurred by the class representatives, the district court's approval of $15,000 bonuses falls well within its discretion. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). The same is true for the attorneys' fees. *Déjà Vu Servs.*, 925 F.3d at 898 ("It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award."). Aside from alleging that class counsel did not face adversarial pressure when allocating the fees, the objectors provide no evidence that class counsel colluded to pocket outsized compensation. Both the class representatives' awards and the attorneys' fees remain within an acceptable range, even though the settlement required unusually complex and lengthy negotiations.

In sum, the parties are prejudiced by the delay in distributing the settlement, the objectors have offered no valid justification for failing to pay the appeal bond, and the objectors are unlikely to succeed on the merits of their claims. So we dismiss the objectors' appeals of the settlement for failure to pay the bond.

***

We dismiss the objectors' appeal of the motion to extend for lack of jurisdiction, and we grant the motion to dismiss the objectors' appeals of the settlement.